Good morning, Your Honors. Kate Spellman for Appellant Bradford Exchange, and with the Court's leave, I'd like to reserve three minutes for rebuttal. Your Honors, the District Court's decision to remand this case to State Court should be reversed because the purported lack of equitable jurisdiction arising from a plaintiff's strategic decision to withhold an adequate legal claim does not provide a basis for remand, and the Court erred in refusing to permit Bradford to waive its adequate remedy-at-law defense here. The implications for condoning this strategy to effectuate an end-run around CAFA are far-reaching and inconsistent with the practice in this Circuit and other Circuits, and we have already seen a proliferation of this pleading approach in putative class actions across the State. Indeed, this Court has three other almost identical appeals pending before it right now. I'd like to use this time today to highlight three points that I think are particularly salient to our argument. First, Your Honors, the District Court's application of the adequate remedy-at-law doctrine in this case ignores its fundamental purpose, which is to protect a defendant's right to a jury trial, and it elevates the doctrine to a threshold jurisdictional inquiry akin to subject-matter jurisdiction, which is not supported by case law or Federal Court practice and ultimately which serves no Federal or State objective. Well, that would seem to support the idea that your client could waive it. How is that relevant, or is it relevant, to the remand versus dismissal issue? The fundamental purpose of the doctrine?  I think Your Honor is correct that it does go to the issue of waiver, and obviously, I guess I would say that the simplest way to resolve this case that you have before you today is on the issue of waiver. We think that that is very clear, but in terms of the fundamental purpose being to protect a right to a jury trial for the defendant, I also think that goes to the fact that it is a defense that can be raised by the defendant, but it is not kind of a free-floating doctrine that can be raised by a plaintiff, which is... If the purpose is to protect the right to jury trial, and your whole position now is to waive your right to jury trial, kind of, why do we think you have a real gripe? A gripe with the District Court's decision, Your Honor? With the District Court, yeah, I mean... Well, I mean, I think, Your Honor, that our first position is that there is no basis for remand here. So I do think that that is our primary position, is that the adequate remedy at law doctrine does not provide a basis for remand, either under abstention doctrine or any other sort of free-floating... There's no basis for remand? You want to go ahead, or you want dismissal? This is where I was a little confused. I'm sorry, Your Honor, I mean, our position is that the adequate remedy at law doctrine does not provide a basis for remand, and in this case, it should not have been taken up. The alleged lack of equitable jurisdiction here should not have been taken up at this sort of procedural posture in the case, based on the plaintiff raising the argument, given that it is a defense that can be raised... If I understand Judge Boggs' question, it's if it stays in federal court, the next step is you say, now you need to dismiss it from federal court. Is that correct? No, Your Honor, that is not our position, and we do not intend to seek dismissal of the equitable claim from federal court. And that's because of the waiver. That gets back to, you would waive the equitable jurisdiction defense, or whether we call it a defense or whatever we call it, you'd waive the equitable jurisdiction issue and stay in federal court. That is correct. In this case, we are willing to waive the adequate remedy at law defense in order to stay in federal court, to the extent the court finds that we are required to waive it in order to avoid a remand or a dismissal. But our initial position is that there is no basis for a remand, and that there also is no basis for the court to... There was no request for dismissal, Your Honors, so there is no basis for a remand. The court did not have the right to remand the case based on the plaintiff's motion to  There was no request for dismissal in front of the court at that time. And I think fundamentally, the equitable... The adequate remedy at law doctrine, which goes to equitable jurisdiction, is not a fundamental threshold jurisdictional inquiry. So nobody wants to say, at least when I looked at it, and tell me if I'm just wrong, I would have said they have an adequate remedy at law, they just chose not to use it. And therefore, I take it nobody wants to say that they do have an adequate remedy at law, and therefore there's no equitable jurisdiction? Well, Your Honor, I think that the plaintiff is saying that. I think the plaintiff is saying that they have an adequate remedy at law, but they chose not to assert it. And I think that our position is, because that is how the plaintiff has proceeded, the case is, of course, removable under CAFA, which nobody disputes here. And we don't believe that it is... That the court had the power to remand on the basis of the adequate remedy at law doctrine. So we think that the case should just remain in federal court. The decision remanding the case should be reversed, and the case should simply proceed. However... So can I ask you about Poussey and Jones v. Hanson? Because I read that to say, if the court, in looking at the proofs, found none of the matters which would make a proper case for equity, sorry, case for equity, it would have the duty of the court to recognize the fact and give it effect. So that sounds... And in that case, as I understand it, it was a sua sponte issue. So I don't quite understand how your argument that the court could just proceed along and not notice this problem is consistent with Poussey. Your Honor, I apologize. In Poussey... It's at... Oh, I'm sorry. Wait a second. Sorry. I'm saying the wrong case. I'm sorry. I was just reading from Allen v.... I'm sorry. Yes, Allen. It's Allen v. Pullman. Yes. I have my notes, have both cases next to each other. I read the wrong case name. No, no. So I apologize. It's Allen v. Pullman at page 662 that has the quote I just said, which is that if there has been no proper case for equity, the court must recognize that fact and give it effect. Yes, Your Honor. Excuse me. I apologize. I am finding that case in front of me, but I know the case that you're talking about. There, Your Honor, I think that what we would say there is that decision there, which was before the merger of law and equity, and I can speak more to that if the court would like, but that statement in that case does conflict with later cases that find that the adequate remedy at law or the equitable jurisdiction can be waived by the defendant. So I do think that it goes back to waiver. Okay, maybe. But I think you said to Judge Boggs, this isn't something the court needs to do a sua sponte. It can just stay in federal court. I mean, I guess by proceeding, you're saying we would waive it, though, but isn't the waiver needed? That's what I'm saying about this Pullman. I said the wrong case, but Pullman, it seems like the court has to do something unless there actually is a waiver. So Your Honor, I think that later cases have clarified that it is not a requirement for the court to sua sponte consider this issue. But I think that perhaps it is permissible for the court to sua sponte consider the issue of whether there's an adequate remedy at law or whether there's equitable jurisdiction. That doesn't make it permissible to remand on that basis, would continue to be our position, and I think that's clear from the case law, and I can speak more to that if the court would be interested in hearing. But I think that so there's no basis to remand sua sponte should the court take the issue of sua sponte in sort of a dismissal posture, for example, then the defendant would have the opportunity to waive. But I think there's other case law that says, and later in time, right, so Allen is from 1891, and we're talking about a lot of case law that existed from 130 years ago. I would point the court to, let me find the site, the Beacon Theaters v. Westover case, Your Honor, which is from 1959 where the court said, unless there is an issue of a right to jury trial or other rights which depend on whether the cause is legal or equitable, the question of adequacy of legal remedies is purely academic and need not arise. So I think that perhaps to Your Honor's question, the court, perhaps there is discretion to raise the issue sua sponte in the sort of dismissal posture should the court feel that there is an issue that needs to be addressed with respect to jury trial or another substantive right that is implicated. But it is in that posture that then the defendant could choose to waive the defense because it is a defense that goes to a defendant's right to a jury trial. And as we know, the right to a jury trial is waivable. And so because that is what it is protecting, the defendant should have that right. So I think hopefully that answers Your Honor's question. I mean, here it wasn't raised sua sponte, it was raised by the plaintiff who asked for a remand and the district court that had to entertain that request. And it seemed like your first order of position was you just can't remand it at all and then should what, dismiss it for lack of equitable jurisdiction? No Your Honor. Our position is that the court should simply deny the remand. Right. But the reason for that presumably would be because you're waiving the defense. Well, no, I would, I mean, we would disagree with that, Your Honor, respectfully. That I mean, I think our initial position is that there is no basis for remand. The relief being sought by the party was a remand and there is no basis for remand here. So I can speak to that. And the reason why is because the federal court, you would say, lacks the power to remand a case when someone has raised this equitable jurisdiction issue? Yes, Your Honor. We would say that. So, I mean, I think that this is not an issue that is properly raised. What if you had consented to the remand? What if your client had consented to the remand, would you say the federal court lacks the power to remand? I know you removed it, but what if you changed your mind and said, OK, you know what, we'll go back to state court? Your Honor, perhaps that would put the case more in the position of sort of a contractual waiver of the right to be in federal court. Yeah, but we're talking about the power of the federal courts. You can't contract around our authority or lack thereof, right? So it doesn't seem to me to be, this just kind of keeps falling back on the question of what your client wants here and whether, if you want to stay in federal court, whether you're allowed to say that essentially by waiving this defense. I mean, Your Honor, we do obviously take the position that the defense is waivable and our client has affirmatively offered to waive the defense. So, I mean, that is obviously on the table and as I mentioned earlier, I do understand that that is sort of the simplest approach in this particular case to come to a resolution. But I do, I guess I would take some issue with your Honor's conclusion that, well, I guess what I would say is, you know, our position is that there is, that the Supreme Court has articulated limited bases for remand. There are statutory bases for remand and there are non-statutory bases for remand which have included a lack of supplemental jurisdiction, a forum selection clause, which in effect, Your Honor, is essentially a contractual waiver around the right to be in federal court, as well as abstention principles. There are no abstention principles that apply here. So none of the articulated abstention principles apply here as were articulated in Colorado River or Quackenbush. And as this court said in the Peridot Tree case that we cite in our case, in our brief, excuse me, you know, where there are no sort of abstention principles that apply, the court should not kind of develop this free-floating right to abstain. But if the district court had denied the remand, what would then happen if your client moved to dismiss for lack of equitable jurisdiction? I think that at that point, the district court would have taken that up. Right, and that gets us into this perpetual loop issue that a lot of courts have been concerned about. And I thought one of the things you said at the beginning was, well, we're not moving to dismiss. That's correct. Okay, but I think that's the reason then is because you're just waiving this motion to dismiss that you do in fact have. If the district court denied the motion to vacate in the case we're in federal court, you would be able to dismiss that case for lack of equitable jurisdiction. Your Honor, I mean, I think that we would have the right to raise the objection on that basis. But I do think there is still a question of whether it's appropriate for a court to dismiss at the initial pleading stage based simply on a plaintiff's allegation that there is an adequate legal remedy or an adequate legal claim to be had. And I think that that is because, so I would just say that the Ninth Circuit obviously decided in Sonner, both Sonner cases, as well as the Guzman case. And I think there's the Key v. Qualcomm case, if I'm remembering correctly, that this issue can be decided later in the case, right, because it really goes to the issue of whether the court can issue relief as opposed to whether there's a jurisdictional sort of threshold inquiry. So those are published decisions saying that the court can consider the adequate remedy at law defense later in the case when it has the full view of what the case is about, what damages or what relief, I should say, the plaintiff is seeking. There are no published Ninth Circuit decisions saying that it is, in fact, appropriate to dismiss at the initial pleading stage based on just simply an alleged lack or alleged presence of an adequate remedy at law or an alleged lack of an adequate remedy at law. So I think that that is still sort of an open question. However, obviously there are district court decisions that have done that. And, you know, I think that it would be a defense that the defendant could raise here. Could I just ask, if we rule that the district court can't remand in a case like this without first giving a chance for a waiver, I assume that defendants who remove would probably waive because they're trying to be in federal court. I think it's your position that the plaintiff didn't include the remedy at law because they wanted to stay in state court. But if we have this new world where you can stay in federal court by waiving, will the outcome be that people do start pleading the remedy at law? Like, can you tell me, like, what's going to happen to the world if you win here? I think that's probably right, Your Honor. I think that that and that kind of goes to the incentives that we're talking about here. So I think that under plaintiff's sort of theory, the incentives that are created by that theory of the world and that conception of equitable jurisdiction is that plaintiffs will start restricting the remedies and the claims that they're seeking on behalf of unnamed class representatives. And perhaps that's permissible. And, of course, plaintiff argues that he is the master of his complaint. And I do have some thoughts about that I can address. But I think that it's very clear that the incentives are that there's a limitation on sort of the relief that is requested here. Plaintiff did not request. They did not allege a CLRA claim, but they also did not request injunctive relief. And I think that was also for the purpose of limiting the case to prevent it from going forward in federal court. So I think that in the alternative, if we win here, I think the incentives are, in fact, reversed in the sense that the plaintiff will no longer have an incentive to sort of limit that relief imputative class actions on behalf of unnamed class representatives. And I think if the CLRA were added just in this hypothetical new world where there's a waiver option. Are those remedies really equivalent? So there's that world would be in federal court. But what the claim and the remedies and everything, it's really identical or is I know there's then the jury trial issue. Can you can you walk me through how the world would be different if defendants could stay in federal court in these claims? Different from as it I mean, because I guess I would say, I guess, well, I guess you're saying it's already different. But let's say the plaintiff is currently right that they can stay in state court. But now we announce you can waive and that means now you can stay in federal court. So once that's the universe where a waiver is possible. Maybe people add the CLRA and that means there's now jury trials in federal court. Yes, I think that is correct, Your Honor. I mean, this is not the approach that all plaintiffs are taking, just to be clear, even now. Right. And the world as we currently live in it, you know, district courts every day are issuing decisions on the merits on CLRA, FAO and UCL claims. And this court has affirmed such decisions on the merits without the district court sort of sui sponte considering its equitable jurisdiction. So, I mean, that is the world we currently live in, Judge Friedland. But I think if we win, that will continue to be the world that we live in, where the district court can consider, you know, all of those claims unless there is an objection raised by the defendant as to the adequate remedy at law, unless the court, I guess, in seemingly in Your Honor's conception of it, raises this issue sui sponte and defendant waives. So, you know, I think that I hope I'm answering your question. Yeah, I'm wondering. So it seems like one difference is you could have a jury trial because now you've got a legal claim. Is there any other difference in the substance of the CLRA versus the 7200 or whatever? Like, is there any difference in I'm wondering when we say adequate, whether they're identical? It's a very good question, Your Honor, and certainly have given this a lot of thought. I mean, I think in Sonner, right, the plaintiff contended that there were that the were identical, excuse me. So the plaintiff essentially conceded that what they were seeking under the CLRA was exactly the same as what they would seek under the UCL. But I think to Your Honor's point, I mean, the CLRA provides for legal damages. Right. And it also provides for punitive damages. The UCL does not provide for punitive damages and only provides for restitution, which is a more equitable, of course, that's why we're here, remedy and perhaps has some, you think there could be a distinction between what would be available at the end of the day in terms of relief for class members between those claims. We've taken you over your time, but I'll still give you, I think you wanted three minutes for rebuttal. We'll still give it to you. So let's hear from the other side. Thank you. Good morning, Your Honor. Zach Dostart for Plaintiff Appellees. Let me first address the waiver argument that the appellant has raised. The waiver argument, in effect, is seeking to unwind what York did, what Sonner did, what Bartling has held, what Guzman has held and what Barranco has held. Sonner held that equitable jurisdiction is a, quote, rigid restriction on a federal court's ability to exercise its equitable jurisdiction. And in Guzman, the court held, which I know Judge Freeland is very familiar with, that although subject matter jurisdiction and equitable jurisdiction are distinct, both must exist in order for a federal court to address the merits of the equitable claim. And in Bartling, although it's unpublished, the Ninth Circuit held that the plaintiff is obligated to allege an inadequate remedy at law in order to invoke the court's equitable jurisdiction. And in Barranco, which is a published Ninth Circuit decision, the Ninth Circuit held that even if the party stipulated, and this gets to Judge Bress's question, but on the other side of the issue, even if the party stipulated and we said we would agree, which we don't, but to the court's lack of equitable jurisdiction, we're going to compel the court to hear our case. We can't. And that goes back, I mean, it really does go back to the Judiciary Act of 1789. Judge Orr got it right. I mean, this is a fundamental tenet of our democracy. Hold on a second. I mean, one thing that's hard to reconcile with this is just the practice of federal courts, which is that we do not go around, we look for other things. You know, do we have subject matter jurisdiction? But we're not scouring cases to say, do we, is there an equitable jurisdiction issue? Sometimes we notice it and that can happen, but, and parties can bring it to our attention. But we've never thought you have to go and figure that out, sua sponte. I understand Your Honor's concern or question. And let me bring it back to the question that Judge Friedland raised, which is the Allen versus Pullman case. And that sort of addresses it. In that case, the United States Supreme Court said even if equitable jurisdiction or the act thereof was not raised by the pleadings or by the parties, plural, it would be the duty of the court to examine whether it exists. Now, I understand what the court is saying. Well, counsel, are you saying that we always need to look and, you know, it's a new, it's like subject matter. Well, I'm not saying that, but I'm saying once it's raised, once it's raised by the parties or the court, sua sponte, as my colleague indicated, courts have done, it does need to be addressed. And here, Judge Hayes did address it. Judge Hayes addressed it and said it is wanting. It is not here. And why can't you waive it? I mean, you can waive personal jurisdiction. You can waive lots of things that go to the, quote unquote, power of the court. Well, what I would suggest is that the Guzman court was very clear that the court could not, should not, and did not reach the merits of the claim because equitable jurisdiction was  Here, we have raised it. We have raised the lack of the court's equitable jurisdiction. So it's not a personal privilege of one party to compel a federal court to exercise jurisdiction it lacks. That's not what equitable jurisdiction is. If a state, looking at York, for example, or looking at Schlesinger or looking at Cates, for example, a state cannot pass a law that works to expand a federal court's equitable jurisdictional powers. This goes back to our Constitution. So if a state can't pass a law that requires a federal court to have broader equitable jurisdictional powers, how can a defendant force a court to have powers that even a sovereign state can't hold? So what of the quote in Pusey, unlike the lack of jurisdiction as a federal court, a lack of equity jurisdiction, if not objected to by a defendant, may be ignored by the court. Was the court simply wrong there or has that been overruled by a particular case? So that language needs to be read in context of that decision and in every decision that has followed it and surrounds it back to Cates, 1893, all the way through to any decision that addresses equitable jurisdiction. It's the holding that matters. It's not the dicta. And what I would suggest is that if it is not raised by the parties, if it is not caught or raised by the court and the parties end up on appeal for the first time, a party then would not be able to say, oh, wait, I don't like the way this went. We want to challenge the court's lack of equitable jurisdiction. And in that way, it's true. It is distinct from subject matter jurisdiction. But as Guzman held, both must exist. I don't understand your position. I mean, it seems to me that if somebody raised it on appeal, we would then, under your view, have an obligation to evaluate and see how we could accept a waiver on appeal that we couldn't accept in the district court. I so what you're just so I understand your honor's question is, could we actually, in fact, address the. Yeah, I mean, if the case was proceeded in the district court, nobody raised it and it got on appeal and you came here and said, aha, you know, there's an issue with the equitable jurisdiction. It would seem to me under the logic of your position, we would have to say, oh, you're right. We have to dismiss for lack of jurisdiction. Well, that's a question maybe for a different day. But I would suggest that maybe your honor is right. In fact, in digital media security, which is from the Sixth Circuit, it was Judge Murphy that wrote the opinion. The parties had done a lot of work. And at the conclusion of that opinion, which was a 2023 opinion, he says, I commend the parties for all the work. I commend the district court for all their great work. I'm sorry, I can't issue the equitable relief being requested of me because those decisions on the court's exercise, if it's equitable jurisdictional powers, belong in Congress. The issues with respect to the question of whether or not a federal court can exercise its equitable jurisdictional powers when they're lacking is something that Congress would need to address. The parties couldn't agree to it. And that's the same thing Justice Scalia held in Grupo in 1999. He says it's near the end of the opinion. Once again, he says, I understand that the parties are asking for the court to exercise its equitable powers, but we can't. Because in our democracy, these questions belong, colon, in Congress. That's where this issue lies. So is your is your honor's question to the extent that it's saying, well, maybe actually it's not even waivable on appeal even that I'm conceding too much, maybe. But for purposes of today, there's definitely no waiver. Judge Hayes found it was lacking. It is lacking. And therefore, it is a rigid restriction. Both equitable jurisdiction and subject matter jurisdiction must exist. You keep talking about Congress. Where do you think Congress has spoken to this? This goes back to Judge Orrick's decision in Guthrie. This originates the court's equitable jurisdictional powers originate from the Judiciary Act of 1789. And it's the courts of chancery. And it's the issues with respect to what equitable powers does a federal district court have when sitting in a court of equity? And when can it reach, when can it exercise those powers and when can it not? And when Erie, which was the same year, in fact, as the merger of law and equity, 1938, came down, it was seven years later in York, 1945, where the court addressed it. And the Supreme Court was very clear. It said Congress has spoken and our exercise of our equitable remedial powers cannot be expanded by state statutes. Sorry, sorry. Just stop for a second. I thought it was common law, though, that's giving us this equitable jurisdiction concept. You're saying you keep saying it's Congress. So where is the language that Congress wrote that tells us about this? Well, in the Judiciary Act of 1789, the federal equitable jurisdictional powers were limited as to those powers that England had in the courts of chancery. That's where the common law comes. That's correct. Exactly. And this is addressed. This is laid out very clearly in the Sonner decision, in fact. So Sonner addresses what happens when these principles collide the federal common law courts, equitable jurisdictional powers. What powers does the court have or not have? And that was answered then in Guzman. If the holding of Guzman, the last sentence before the conclusion where we cannot consider the merits of a plaintiff's claims, we also lack the ability to bar a state court from doing so. And that is derivative or that is a part of the Sonner holding that equitable jurisdiction is a rigid restriction. And Guzman says both equitable jurisdiction and subject matter jurisdiction must exist. Bartling says the plaintiff is obligated to allege an adequate remedy at law. And I mean, I had understood this to be more about common law than Congress. But in your you've been talking about Congress. So what do you think Congress would say if they wanted to change this? Well, I would suggest. I don't know exactly the answer is if Congress wanted to address a federal court's equitable jurisdictional powers, and there are many ways in which that could be done. I'm not sure of all of them, but I do know that as we sit here today, the Supreme Court from Cates versus Allen 1893 to Grupo, to York, to Schlesinger, to this court's holdings and Sonner and Guzman limit them to what they have been and what they are today. So if Congress were to address this, as Justice Scalia said, as Judge Murphy said, I'm sure it could come up with a way in which you could do it, but it hasn't. I mean, we're talking just purely congressional intent that, you know, the other side of this is that is CAFA, right? And it seems that this strategy that's being presented to us is a real end run around that. Not at all, Your Honor. In fact, CAFA, there's no dispute about CAFA. CAFA, the minimal diversity, five million in controversy, that's not what we're disputing here. And there's been, once again, there's been sort of contentions. CAFA or the council is doing this or, you know, Clevenger and Judge Carney are wrong. This is not an issue that is for me or for CAFA. It's for Congress. CAFA says what it says, but it didn't address or change federal courts' equitable jurisdictional powers. Period. And the defendant recognizes that. They have to say things like, it's an end run around, or you're looking, they're kind of ad hominem attacks saying that, you know, something isn't right. Well, CAFA didn't address this. And every district court that has examined it, agrees. I mean, do you deny opposing counsel's description of the fact that a lot of cases have reached equitable issues without talking about this? So when we look at, like, what would Congress think the world was? They might think it's a world in which CAFA didn't need to address this, because it seems like federal courts often talk about equitable things. I'm not, I have, I do not know, Your Honor, what the legislation 20 years ago and the legislatures did or did not think at that time. What I do know is what they did and they did and they did not do. And what we know they didn't do is change the court's ability to exercise its equitable powers in certain circumstances. And I, to the extent that CAFA dictates the conclusion here, I would suggest that it's clear. CAFA didn't change the court's equitable powers. So can I ask you, you want to be in state court. That's why you're making all these arguments, right? That's ultimately you'd rather be in state court than federal court. I believe that only the state court has the ability to issue the relief requested. The federal judge, Judge Hayes, he says, I lack equitable jurisdiction. So if we hold, though, that you're wrong and they can waive that, and so it could stay in federal court as long as they waive the defense. If that becomes clear going forward, how do you think that's going to change class action litigation? Well, first of all, it's not a personal defense. It's not a defense of a single party. Okay, but say you lose that. Just tell me as a practical matter how the world is going, I'm just curious about what this is going to do to litigation if we say you're wrong. And we make it definitively clear that if the defendant says we can stay in federal court, we will. They haven't said that. I understand. Okay. We hold that they can and then they do. And so if the case is going forward, defendants will. What will happen? And so just so I understand Your Honor's hypothetical, Your Honor is saying that if this court were to say, contrary to Guzman, that's equitable. Don't, just answer the question. We are going to say that you are wrong. Then what? Let me just say this. CAFA for 20 years has brought cases from state to federal courts. And the multitude of class actions that are currently litigated in federal courts that involve legal causes of action, privacy, labor, need I go on, they'll remain in federal court. But in this case, if you're stuck in federal court, are you going to amend the complaint to add a CLRA claim or are you going to do something else? That's what we're trying to figure out here because it was obviously an intention to limit the claims to stay in state court. So that was a strategy. If the strategy fails, then how are clients in your client's situation going to react to that? That's our question. Yeah. What I'm suggesting is that these are the rules of the road. They did, well, yeah, let me answer that. Let's say we change them. So in the rules of the road where the defendant can stay in federal court, would you add a CLRA claim? Or would future plaintiffs like you add a CLRA claim? I do not, Your Honor. I do not believe. See, here's the deal. Plaintiff is the master of her complaint. And this is just as... Okay, you're telling us we can't do this, but we say we do. You just don't have an answer for us. Well, I'm suggesting that plaintiff should not be and cannot be forced to amend her... You're right. You can't. You're not required to allege a CLRA complaint. That's up to you. But the question is what's going to happen if you are in federal court? Just as a practical matter, how do you see, as someone who practices in this area, how do you see the practice developing? As the defendant, as the appellant argued, they may address the court's lack of equitable jurisdiction at a different time. And if they did that and they brought a motion to say, in fact, the court lacks equitable jurisdiction, or if this were to come up on appeal on the merits like it did in Guzman, then we would have said, wait a second, the court didn't have equitable jurisdiction. Plaintiff's complaint only sought equitable relief. It is a rigid restriction. So what I'm suggesting is that in this situation, the notion that litigants would be, in effect, required to disregard their ability to... Okay, let me give you a new hypothetical. Congress passes a law tomorrow that says federal courts have... Federal courts have equitable jurisdiction where the defendant waives any objection to that. So the Congress writes that in a statute. Now, would plaintiffs in your position have CLRA claims in their complaint? Because there's not going to be any way to stay out of federal court anyway. You might as well have it. And in Your Honor's hypothetical, is Congress also saying that plaintiffs don't have a say in the matter about a court's federal... Basically, yes. So Congress says if defendants want to add to CAFA, you can remove and it can stay there as long as you don't make an equitable jurisdiction defense. The answer is I don't know. I think it would depend upon the circumstances of each case. There are California case law, for example, in the nationwide case, talk about the remedial purposes and the types of relief that the UCL intends to be equitable and to proceed on an equitable track. And so I think that there are significant issues with Your Honor's hypothetical with respect to all of the Supreme Court and Ninth Circuit guidance that I've discussed. But what I'm saying is I don't... I can't answer what hypothetically... Is there anything... It sounds to me from... If I understand, the CLRA is that it gives you additional options, but doesn't take anything away. Like, is there anything bad about having a CLRA remedy other than the fact that it might make you be in federal court? Well, the CLRA, if it were brought in Your Honor's hypothetical, arguably lead a federal court to have a different conclusion than the state court would have. Because in federal court, the defendant has argued if there were a CLRA claim, they would have some right to potentially have that claim heard by a jury. And is that not true in state court? In state court, the remedies are cumulative and under... That is not... The answer is correct. It is not true. California has its own right to a jury trial. Article 1, Section 26 of its constitution. It is different than the federal right to a jury trial. And California Supreme Court guidance nationwide says that California courts want to have UCL consumer-type relief remedies sought potentially first by the court, heard first by the court. And that is a fundamental, important difference. So what Your Honor is suggesting, that hypothetical, I think, would very much undermine California's ability to enforce its consumer protection laws. It is an affront to comedy. This is what the Ninth Circuit held in Davidson. Having removal work as an undermining principle to California consumer protection law is an affront to comedy. And that's because you're saying now that California law wants these questions to be California has stated that. And that is the UCL. That is why the UCL exists. It's to get relief quick, expedient, fast. And that is the definition of consumer protection under the UCL. But if you stayed in federal court and you just didn't add the CLRA, you would be... You wouldn't have that problem. If we stayed in federal court and we didn't add the CLRA and the court were to hold that equitable jurisdictional principles don't apply, I guess there'd be an issue there. If, if, if. But the problem is there is so much binding case law. Ninth Circuit, Supreme Court, all the way from rigid restriction to both must exist, cannot stipulate to be around it under Bronco. I think we have your argument. I think we've taken you over your time and we have your argument. Thank you, counsel. I appreciate the argument. Let's put three minutes on the clock for rebuttal. Thank you, Your Honors. I'd like to address just a few points that came up in my counsel's argument. Number one, I think this was the point we were talking about earlier in the hypothetical that Judge Friedland, you were attempting to pose. I think what I heard you trying to get at or my view is that the incentives of holding for the defendant here are sort of exactly what I think you were insinuating, which is that there would be additional requests for relief pled most logically by the plaintiffs on behalf of putative class members. And so I do think that it gets at sort of the Supreme Court's articulated concern in Knowles about limitations on requested relief for putative class members made by representative plaintiffs. And so that's just talking about incentives of the ruling here. I think it would incentivize plaintiffs to bring additional requests for relief because they know that those will not, one way or the other, they will likely be in federal court. And that might, you said that would give punitive damages potentially. Yeah. Well, under the CLRA, punitive damages are, I mean, and of course, not conceding that they would be available in this case or that they would be appropriate in this case. They are a remedy under the CLRA that is not available under the UCL. And I would just make a couple other points. I think, Judge Bress, you're exactly correct to analogize to personal jurisdiction here with respect to the waiver issue. And I would point the court to the Rergis decision of the Supreme Court, where they stated that essentially personal jurisdiction is a fundamental issue that or a fundamental limitation on a federal court's right to issue relief, but it is also waivable. And I think that that really kind of, you know, makes sense in conjunction with what the court has said in Sonner and Guzman, right? The court in Sonner and in Guzman said, I mean, it recognized the distinction between subject matter jurisdiction and equitable jurisdiction. Both are necessary. One can be waived. Yeah. If there's a distinction with personal jurisdiction, it may have to deal with the, whether the district court can sua sponte raise it, because we don't usually think of district courts sua sponte raising personal jurisdiction. If anything, that would seem to be taking a defense of a party. But it seems to be the understanding that maybe equitable jurisdiction is a little different in that way, that you could, a federal court could raise it sua sponte. I think, I think I have to concede that that is potentially true. But, you know, I think with respect to waiver, the analogy between personal jurisdiction and equitable jurisdiction holds quite tightly. And I think that your honors were right to, I think your honors raised it, if I'm remembering, the issue of, you know, waiver on an appeal. So if equitable jurisdiction was sort of this threshold jurisdictional inquiry, as plaintiff seems to be suggesting, it should not have been waived, you know, for purposes of appeal. Yet in your, in this court's decision in the Connecticut general life case, which we cite in our brief, that is exactly what the court found. That the equitable, the issue of the alleged lack of equitable jurisdiction was waived and couldn't be decided on the appeal. So I do think that that court, that case addresses that issue quite nicely. And I would just say, we were sort of talking about Congress congressional acts that, you know, allegedly established equitable jurisdiction as a limitation. I would point the court, if you're looking for sort of additional congressional acts, right, to the merger of law and equity and the federal rules of civil procedure that came out in 1938, including rule 18, which established that parties can plead in the alternative, legal and equitable claims. And I think that if that is true, then why would it then follow that, you know, equitable claims need to be remanded on the basis of their, of the existence of a legal claim? It would sort of vitiate that entire rule. I would also just point out for the, that rule 18B of the federal rules of civil procedure actually expressly abrogated the holding in Cates. And that's just a fact that, to be honest, I read as I was preparing for this argument, but that rule 18B actually addresses the exact holding in Cates and it abrogated it. And that was acknowledged by the Fifth Circuit, actually, in a case I can, apologies. Well, I will get back to that if I can, but, and I think the last thing I would just say is, you know, I do think we view this, of course, as an end run around CAFA and in California, in particular, which is, as we know, a hotbed of these kind of consumer putative class actions. I think sort of condoning the strategy that the plaintiffs have taken here would really kind of, again, like, really be a sea change for the way that courts approach these cases in California and would really, you know, vitiate plaintiffs, or defendants, excuse me, right to a federal forum. Here, this is the exact case, type of case that, oh, that- You're over your time. I'm over my time. I think we have your argument as well.  So thank you both sides for the helpful arguments. This case is submitted. Thank you so much, Your Honor. I think we should take a five-minute break before we hear the last case. All rise. Okay, this court shall stand in recess for five minutes.
judges: Boggs, FRIEDLAND, BRESS